UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

IN THE MATTER OF THE SEARCH OF:
Grey and silver colored Verizon Samsung
Galaxy S7 cellular telephone, IMEI:
353450081680340, and Blue WIKO cellular
telephone, IMEI: unknown

Case No. 2:21-mj-18

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Samuel Brown, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since July of 2014. I am currently assigned to the Burlington, Vermont Field Office in the Boston Field Division. I attended the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia full-time for six-and-a-half months. While at FLETC, I received training in practices and methods of illegal firearm possessors, firearm traffickers, and related federal criminal statutes. As a Special Agent, I have conducted and/or participated in a number of investigations involving state and Federal firearm and controlled substance violations. I have interviewed multiple victims, witnesses, and suspects regarding various types of criminal activity. I have also served search warrants for various crimes and have made criminal arrests for firearm and controlled substance violations. Prior to becoming an ATF Special Agent, I was a Law Enforcement Ranger with the United States National Park Service for approximately seven years. As a Ranger, I participated in state and Federal investigations involving possession of illegal weapons, including firearms, and possession of controlled substances. I also conducted numerous investigative stops and

probable cause searches of people and vehicles. I participated in physical surveillance operations and in the service of state and Federal arrest warrants.

2. I submit this affidavit in support of a finding of probable cause to search two cellular telephones (hereinafter referred to collectively as the Subject Devices), recovered pursuant to the investigation into Matthew Fidler for suspected violations of state and federal firearms and narcotics distribution laws. The Subject Devices are described with greater particularity in Attachment A, which is attached hereto and incorporated herein. The applied for warrant would authorize the forensic examination of the Subject Devices for the purpose of identifying electronically stored data particularly described in Attachment B. Specifically, law enforcement recovered and currently has secured in ATF custody in the ATF Field Office in Burlington, Vermont, the following:

   a. Grey and silver colored Verizon Samsung Galaxy S7 cellular telephone, IMEI: 353450081680340 (Subject Device 1); and
   
   b. Blue WIKO cellular telephone, IMEI: unknown (Subject Device 2)

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts as set forth in this affidavit, I believe that there is probable cause to believe the Subject Devices, described in Attachment A, contain evidence of narcotics distribution, in violation of 21 U.S.C. § 841(a), possession of a firearm by a previously convicted felon, in violation of 18 U.S.C § 922(g)(1), and possession of a firearm while engaged in a drug crime, in violation of 18 U.S.C § 924(c), as described in Attachment B.

## PROBABLE CAUSE

5.    I have reviewed an affidavit of probable cause written by South Burlington, Vermont Police Department (SBPD) Officer Goslin, and have spoken with other SBPD investigators. Based thereon, I learned the following:

    a.    On February 9, 2021, at approximately 11:57 pm, while on patrol in the parking lot of the Holiday Inn located at 1068 Williston Road in South Burlington, Vermont, Officer Goslin observed a male operator sitting alone in a white Cadillac (Vermont tag # HMY640). Office Goslin conducted a DMV records check of the vehicle and was advised by SBPD dispatch that the vehicle was registered to a female. Another officer informed Officer Goslin that if the vehicle was occupied by a male, it was possibly Matthew Fidler, for whom there were active arrest warrants. Officer Goslin obtained a photo of Fidler that showed identifying tattoos and facial hair. Officer Goslin approached the vehicle to make contact with the occupant. As the officer approached the vehicle, he observed the male walking away from the driver's side. Officer Goslin called out "hey Matt" and the male turned around and informed the officer he was not Matt but in fact "Brian." Officer Goslin requested the male to lower his face mask so he could see his facial hair and any potential neck tattoos. The male initially refused to do so and blamed COVID. After Officer Goslin informed the male that they were more than 10 feet apart and he needed to pull his mask down, the male complied. Officer Goslin recognized the male to be Fidler and attempted to take him into custody on the active in-state arrest warrants. Fidler fled and ignored commands to stop and to show his hands. After a short pursuit and resistance from Fidler, Fidler was taken into custody.

    b.    During a search of Fidler's person incident to arrest, officers found a Smith and Wesson SD40VE .40 caliber pistol (serial number FCZ2534) loaded with a 13-round

magazine and one additional 13-round magazine (for a total of 26 rounds of Blazer brand .40 caliber ammunition). Officers also located on Fidler's person the following:

    i.    Approximately 15.49 grams of what field-tested positive for methamphetamine in a baggie.

    ii.    Approximately 29.99 grams of what field-tested positive for methamphetamine in a baggie.

    iii.    Approximately 3.81 grams of what field-tested positive for methamphetamine in a baggie.

    iv.    Approximately 3.69 grams of what field-tested positive for methamphetamine in a baggie.

    v.    Approximately 3.93 grams of what field-tested positive for methamphetamine in a baggie.

    vi.    Approximately .52 grams aggregate weight of suspected heroin folded in paper.

    vii.    Approximately 10.06 grams of suspected heroin in a baggie.

    viii.    Approximately 3.69 grams aggregate weight of an unknown black crystal substance in a baggie.

    ix.    256 suspected Oxycodone Hydrochloride 30 mg pills contained in four different baggies.

    x.    Five suspected Amphetamine and Dextroamphetamine 20 mg pills in a baggie.

    xi.    $1,546 in U.S. currency.

    xii.    A Vermont identification card for "Richard J LaBlanc".

    c. SBPD officers on scene, who were familiar with Fidler's status as a previously convicted felon, seized all the aforementioned items and contacted ATF.  At the time of Fidler's arrest, he was the only individual physically associated with the Cadillac.  SBPD officers seized the Cadillac with intention to obtain a warrant to search it.  At the time of the writing of this affidavit, Fidler has been in custody since his arrest.

  6. From reviewing documents and speaking with SBPD Detective Dale Crispin, I learned the following:

    a. On February 11, 2021, Vermont Superior Court Judge Alison Sheppard Arms signed a Vermont state search warrant authored by SBPD Officer Goslin authorizing a search of the Cadillac that Fidler had been in just prior to his arrest.

    b. On February 12, 2021, SBPD investigators executed the search warrant and located a black backpack behind the driver's seat containing Subject Device 1, Subject Device 2, an invoice from "Pyramid Air Gun Mall" to Fidler, three suspected ledgers, unknown pills, and a birth certificate in the name of "Brian K Filak."  Investigators also located additional pills, suspected heroin, suspected crack cocaine, and $4,020 in U.S. currency secreted in two different electronic devices.

  7. On February 11, 2021, I took custody of the firearm and ammunition from SBPD.  On February 16, 2021, I took custody of the Subject Devices from SBPD.  Since coming into ATF custody, all items obtained from SBPD have been stored in the evidence vault at the ATF Burlington Field Office (30 Main Street, suite 430, in Burlington, Vermont).

  8. I reviewed Fidler's criminal history and noted the following five felony convictions:

      a.      Possession of a controlled substance in California Superior Court (San Diego) on March 19, 2008 (court case # SCE275363).

      b.      Burglary in California Superior Court (San Diego) on December 9, 2009 (court case # SCE294327).

      c.      Assault and robbery in Chittenden County, Vermont District Court on January 20, 2017 (docket # 4550-12-15).

      d.      Aggravated assault on a law enforcement officer in Chittenden County, Vermont District Court on November 30, 2018 (docket # 866-3-18).

      e.      Burglary into an occupied dwelling in Chittenden County, Vermont District Court on November 30, 2018 (docket # 887-3-18).

9.      I reviewed a docket sheet for Fidler's most recent felony conviction (Chittenden County, Vermont District Court docket # 887-3-18) and noted Fidler was listed as present in court on November 30, 2018, when he was convicted for burglary into an occupied dwelling (a felony).

10.      I spoke with ATF SA Joseph Davis, an expert in the interstate nexus of firearms, and learned that the Smith and Wesson SD40VE .40 caliber pistol (serial number FCZ2534) was not made in Vermont and thus by its presence in Vermont, had travelled in interstate and/or foreign commerce.

**CHARACTERISTICS OF DRUG TRAFFICKERS AND ILLEGAL FIREARMS POSSESSORS**

11.      Based on my training and experience, I know the following:

      a.      Persons who participate in the distribution of controlled substances frequently use cellular telephones, among other communications devices, to coordinate their unlawful activities and to maintain contact with suppliers and consumers of illegal drugs.

b.  Information stored in the memories of these communication devices may constitute evidence of drug trafficking. Among other things, the evidence may contain the telephone numbers assigned to the communication devices, messages received by or sent from the devices, identification numbers and other information contained in their electronic memories, and the records of telephone numbers to which calls were placed and from which calls were received. The device may also contain GPS or similar location information indicating where the devices have traveled.

c.  With their cellular phones, drug dealers often take photographs or videos of drugs, drug paraphernalia, guns, other members of their organizations, cash and assets obtained from profits of drug sales, and locations associated with their illegal activity. These photographs or videos may be stored in the memory of those cellular phones.

d.  Distributors of controlled substances often carry firearms to protect both their product as well as any profits they may obtain from their distribution activities. I have participated in investigations (related to the distribution of controlled substances) in which evidence of unlawful purchases and possession of firearms have been found in the data stored in cellular telephones, including photos stored in the cellular telephone memory – some of which have depicted firearms or individuals possessing firearms – text messages or calls to arrange the purchase of a firearm, or contact with a seller of a firearm through an online advertisement. Often, the same cellular telephones contain evidence related to the distribution of controlled substances, including photographs of controlled substances and bulk United States currency.

e.  Prohibited persons who possess firearms often possess these firearms for long periods of time because they cannot legally acquire other firearms. I know that prohibited persons who possess firearms often keep these firearms in their residences and vehicles (based

upon the fact that firearms are easy to transport) to avoid detection by law enforcement. I also know that persons who possess firearms often possess other items pertaining to the possession of firearms, including, but not limited to: gun cases, original gun packaging boxes, ammunition, ammunition magazines, holsters, targets, parts and accessories for firearms, firearm cleaning equipment, photographs and videos of firearms or of persons in possession of firearms, and documents relating to the acquisition, purchase, sale, and/or repair of all these items, including but not limited to: receipts and documents reflecting the dates of transactions, items acquired, and the names, mailing addresses, email addresses, and/or telephone numbers of individuals associated with these activities.

## INFORMATION REGARDING ELECTRONIC STORAGE AND FORENSIC ANALYSIS

12. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

13. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when. I believe there is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  14.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

15. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

16. Based on the foregoing, I submit there is probable cause to search the contents of the Subject Devices, specifically described in Attachment A, for the evidence delineated in Attachment B of the Application.

Dated at Burlington, in the District of Vermont, this 17 day of February 2021.

_____
SAMUEL BROWN
Special Agent, ATF

Sworn to and subscribed before me this 17 day of February 2021.

_____
HONORABLE JOHN M. CONROY
United States Magistrate Judge